IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 28 2008

By: JAMES N. HATTEN, Clerk
Deputy Clerk

SEAN HAGERMAN,

        Plaintiff,

v.

COBB COUNTY, GEORGIA,

        Defendant.

CIVIL ACTION NO.

1:06-CV-02246-JEC

**ORDER & OPINION**

This case is presently before the Court on defendant's Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment [15]. Plaintiff has filed a Reply Brief in Opposition to defendant's motions ("PRB") [17], and defendant has filed a Reply Brief in response to plaintiff's opposition [18]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [15] should be **GRANTED** and defendant's Motion for Judgment on the Pleadings [15] should be **DENIED as moot.**

AO 72A
(Rev.8/82)

## BACKGROUND

### I.   PROCEDURAL BACKGROUND

Alleging the use of excessive force by defendant Cobb County when its police officers apprehended and shot him, the plaintiff Sean Hagerman filed this action under 42 U.S.C. § 1983 against defendant Cobb County on September 19, 2006. After service of process, defendant filed its Answer [6] on December 6, 2006. Discovery was set to expire on May 7, 2007. (*Id.*) According to the docket entries, discovery occurred during March and April of 2007 ([11]-[14]), and on May 29, 2007, the defendant filed a Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment [15].

Plaintiff has responded to this motion [17] and defendant has filed a Reply [18].

### II.   FACTS[1]

Plaintiff has brought suit against Cobb County for "exhibiting deliberate indifference to the safety of the Plaintiff," and the injuries he sustained as a result. (Complaint ("Compl.") [1] at ¶

---

[1]  Although the parties conducted written discovery, they appear not to have taken any depositions, as none have been cited in their pleadings or recorded in the docket. Accordingly, the Court's recitation of facts, for purposes of summary judgment, has been taken from those statements of undisputed fact by the defendant [15-2] that the plaintiff has not challenged and from plaintiff's Affidavit [17-3] filed in response to the defendant's motion for summary judgment.

2

33.)   Plaintiff alleges that Cobb County police officers used excessive force when they arrested him on September 19, 2004, thus violating his Constitutional rights as secured by the Fourth Amendment. Plaintiff has not sued the individual officers who arrested him and administered the force at issue.

The facts giving rise to the suit began when Cobb County police officers (who are not named as defendants in their individual or official capacities) were dispatched to a domestic dispute. (Defendant's Statement of Material Facts ("DSMF") [15-2] at ¶¶ 1-2.) The officers arrived at 1714 Bertram Lane, Marietta, Georgia. (Id.) They were informed by the 911 caller, Angelia Adams, who was with her three small children, that plaintiff had secluded himself inside the residence with a gun. (DSMF [15-2] at ¶ 2.) The Cobb County police officers secured the area and surrounded the residence. (Id. at ¶ 3.) They then attempted to have plaintiff surrender and exit without incident. (Id.)

A crisis negotiator positioned himself in the yard without his weapon drawn, and for the next hour, maintained sporadic communication with plaintiff. (Id. at ¶ 4.) Plaintiff was stationed in the upstairs window of the two-story residence, he was "frightened and intimidated," and he held different items up to the window during this hour. (Plaintiff's Affidavit ("Pl.'s Aff.") [17-3] at ¶¶ 4, 6-8.) For example, plaintiff revealed at one time that he was holding

3

a screwdriver. (*Id.*) At another time, he revealed a coke can. (*Id.*) The officers also reported that plaintiff was clearly agitated. (DSMF at [15-2] ¶ 5.)

After an hour, plaintiff again became agitated and yelled out a quote made famous by actor Al Pacino in the movie SCARFACE (Universal Pictures 1983): "Do you want to meet my little friend!"[2] (DSMF [15-2] at ¶ 5.) At the same time, the officers report that plaintiff, holding an unknown object, raised his hands above the windowsill. (DMSF [15-2] at ¶ 5; Pl.'s Aff. [17-3] at ¶ 8.) Plaintiff indicates that he "reached out of the bedroom window, with hands in view, and repeated a line from the Hollywood film, Scarface...." (Pl.'s Aff. at ¶ 8.)

In response, and in fear for his and the other officers' safety, Officer Geuze fired a shotgun round at plaintiff. (DSMF [15-2] at ¶ 5.) Plaintiff was hit and fell to the floor upstairs behind the window. (DSMF [15-2] at ¶¶ 5-6; Pl.'s Aff. [17-3] at ¶ 10.) Five other officers also fired their weapons, and soon thereafter a cease fire was called. (DSMF [15-2] at ¶ 6; Compl. [1] at ¶ 25.)

---

[2] The "little friend" to which the Pacino character, Tony Montana, was referring was an M16 rifle with an M203 grenade launcher. Upon yelling this famous catchphrase, Montana blows a door apart, killing five men standing outside. After wreaking more mayhem and homicide, he is eventually shot and killed. This quote has subsequently become iconic for initiations of violence. Its utterance by the plaintiff would understandably cause great alarm for the officers.

4

Plaintiff survived and, according to the officers, walked out of the residence and surrendered to police, after only having been struck by Officer Geuze's shotgun round. (*Id.* at ¶ 6.)  Plaintiff, however, claims that seventy-three rounds were fired, and plaintiff suffered life threatening injuries as a result of being stuck by eleven of the seventy-three.   (Pl.'s Aff. [17-3] at ¶¶ 10-12.)   Although plaintiff's girlfriend, who had made the 911 call, said that plaintiff had a gun, no handgun was found in the house, and plaintiff claims that none existed. (*See* Attachment 1 to Defendant's Brief in Support of Defendant's Motion for Judgment on the Pleadings and Summary Judgment ("DBSM") [15]; Pl.'s Aff. [17-3] at ¶ 13.)

Plaintiff was later arrested and entered a guilty plea to two counts of felony obstruction of officer and battery. (DSMF [15] at ¶¶ 6-7.)   He is currently serving a five-year sentence after violating parole on a previous conviction of attempted murder.  (*Id.*)

The conduct of each officer present at plaintiff's arrest was investigated by the Cobb County Department of Public Safety Internal Affairs Unit.  (*Id.* at ¶¶ 8, 17; Plaintiff's Reply in Opposition to Defendant's Statement of Material Facts ("PRSMF") [17-2] at ¶¶ 8, 17.)   This unit investigates all Cobb County officers involved in shootings.  (DSMF [15] at ¶ 15.)  The purpose of such investigations is to determine whether the use of force complied with the Cobb County Police Department's policies and to determine which areas need

5

training emphasis. (*Id.*)  Each officer involved was exonerated as to his use of force during the arrest. (*Id.*)  The Cobb County Police Department also made an independent investigation separate from the investigation performed by the Department of Public Safety. (*Id.* at ¶ 16.)   This investigation also exonerated each police officer involved. (*Id.* at ¶ 18.)

<div align="center">**DISCUSSION**</div>

## I. Defendant's Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a court has discretion to convert a motion for judgment on the pleadings into a motion for summary judgment and proceed under Rule 56, so long as the nonmoving party is given notice and an opportunity to respond. FED. R. CIV. P. 12(c).  However, here there is no need to convert the motion to one for summary judgment because the summary judgment motion has been filed along with the motion for judgment on the pleadings.

Thus, the Court will only consider the motion for summary judgment, which was filed following the conclusion of the discovery period.  In short, while inadequacies may have existed in the allegations set out in the Complaint and while these inadequacies may support the motion for judgment on the pleadings, the Court does not address them, but instead looks to the undisputed facts in the record to determine whether summary judgment is warranted for defendant.

<div align="center">6</div>

## II. **Defendant's Motion for Summary Judgment**

### A. **Summary Judgment Standard**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (*quoting* FED. R. CIV. P. 56(c)).

7

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## B.    **Requirements for a Viable § 1983 Claim Against a Governmental Entity**

In order to succeed under 42 U.S.C. § 1983 in a claim against a governmental entity (hereinafter referred to as a municipality), plaintiff must show a constitutional deprivation arising from a governmental or municipal custom or policy. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-95 (1978). Even if a constitutional

8

deprivation occurred, however, a municipality is not necessarily liable for that deprivation. *Collins v. City of Harker Heights*, 503 U.S. 115 (1992). Instead, the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385-86 (1989).   In other words, the plaintiff must show that a municipal policy, or absence thereof, helped to cause the employees of the municipality to commit the constitutional violation.

Defendant here argues that: (1) plaintiff does not allege facts sufficient to constitute a constitutional violation; (2) the plaintiff has shown no basis for municipal liability, i.e., he has shown no constitutional defect in Cobb County's hiring, training, supervision, or any evidence of a pattern of unconstitutional use of force; and (3) plaintiff has not established a causal nexus between the alleged constitutional defect in hiring or training and plaintiff's injuries. (DBSM [15].)   Even assuming, *arguendo*, that a constitutional violation did occur, the Court agrees that plaintiff has alleged no basis on which to hold defendant liable.

**C.   Whether a Constitutional Violation Occurred Here**

The use of excessive force in a lawful arrest is a constitutional violation of the victim's Fourth Amendment right to be free from unlawful seizure.   *Tennessee v. Garner*, 471 U.S. 1 (1985); *see also Troupe v. Sarasota County, Florida*, 419 F.3d 1160

9

(11th Cir. 2005); *Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006). The use of force in a lawful arrest is therefore subject to the Fourth Amendment's reasonableness requirement. *Id.* Plaintiff alleges that the force used by Cobb County police officers to seize him was excessive and unreasonable and therefore violated his constitutional rights.

The sequence of events that occurred on September 19, 2004 seems fairly clear. Plaintiff and defendant agree on most of the circumstances surrounding the arrest. They do not agree, however, as to whether the officers' actions were objectively reasonable under the Fourth Amendment.

Among the factors to be considered in evaluating the reasonableness of a particular use of force are the degree of force used, the severity of the crime at issue, whether the suspect posed an immediate threat to the officers or other people, and whether the suspect actively resisted capture. *Graham v. Connor,* 490 U.S. 386 (1989); *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005). An allowance must also be made for the nature of police officers' work, which often involves split second judgment calls. *Id.*

As noted, in the present case, the parties do not appear to disagree substantially on the facts. Instead, they disagree as to whether the officers' conduct was reasonable. As to the firing of the first shot by Officer Gueze, the plaintiff does not quibble too

AO 72A
(Rev.8/82)

much about the reasonableness of that officer's conduct. (*See* Pl.'s
Reply Br. in Opp'n to Def.'s Mot. for Judgment on the Pleadings and
Summ. J. ("Pl.'s Reply") [17] at pp. 14, 16-17 (emphasizing the
quantity of shots fired and suggesting that the officers with
Officer Gueze fired unnecessarily).)    Even though plaintiff
indicates that he had no weapon and that he does not believe that
the objects he held up to the window could be confused for a weapon,
the undisputed evidence indicates that the officers believed that
the plaintiff had a weapon.   (DSMF [15-2] at ¶¶ 3, 5.)  His
girlfriend had so reported when she made her 911 call.  (*Id.* at ¶
3.)   More importantly, by shouting out his challenge, "Do you want
to meet my little friend," the plaintiff was essentially announcing
to the officers that he had a gun and that he was about to shoot
them with this gun.   (*See* DSMF [15-2] at ¶ 5; Pl.'s Aff. [17-3] at
¶ 8.)   Thus, the Court concludes, as a matter of law, that Officer
Gueze was reasonable in firing a shot at the plaintiff.

Plaintiff's primary complaint, however, lies in the firing of
seventy-three rounds by the five other officers once plaintiff says
that it was clear that he was on the ground and offered no further
threat.   (Compl. [1] at ¶ 25, 31; Pl.'s Aff. [17-2] at ¶ 14 (stating
that "[a]t no time, did Plaintiff make any movements or statements
that would justify an onslaught of over seventy rounds of
gunfire.").) This thinness of the record does not enable the Court

to determine, as a matter of law, whether the other officers acted objectively reasonable in firing their shots. Thus, while it may have been entirely reasonable and prudent for the officers to fire many rounds at plaintiff--indeed, the events appear to have unfolded very quickly--the Court will assume, for the sake of argument, that the officers did use excessive force and that plaintiff's constitutional rights were violated as a result. The next question, and only question, then is whether Cobb County is liable for its officers' actions.

### D.   **Absence Of Municipal Liability In This Case**

Although local governments and municipalities may be liable under § 1983 for the actions of their employees, they will not be liable under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-95 (1978). Instead, a municipality may be held liable only if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. In short, although the municipality is not protected by qualified or absolute immunity, *Owen v. City of Independence*, 445 U.S. 622 (1980), a municipality "is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).

Although a municipality may be held liable for those customs or policies that result in constitutional violations, its failure to

AO 72A
(Rev.8/82)

develop a custom or policy in a situation where such is necessary to prevent constitutional violations can also trigger liability. Thus, on a matter where it is reasonable to impute a duty to train, a municipality may be held liable under § 1983 for constitutional violations "resulting from its failure to train municipal employees." *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). This is permissible under *Monell* because the municipality is being held liable for its own wrongdoing: its failure to train. *Id.; Monell*, 436 U.S. at 694. To be actionable, however, the inadequacy of the training must rise to the level of "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388-89. Thus, the municipality's omissions must be so striking that they may fairly be considered a municipal policy or custom. *Id.* at 389 (*quoting* Justice Brennan's opinion in *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986) "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality --a 'policy' as defined by our prior cases--can a city be liable for such a failure under § 1983.").

In *Canton*, the Supreme Court assumed, *arguendo*, that a constitutional violation had occurred and stated that the lower court needed to determine whether the training program at issue was adequate, and, if it was not, whether "such inadequate training can justifiably be said to represent 'city policy.'" *Id.* at 390. The

13

Court emphasized that any lesser standard of fault would result in "*de facto respondeat superior*" liability, which the Court had previously rejected in *Monell*. *Id.* at 392. Although the standard is high, a failure to train may rise to the level of municipal policy in situations where a need for training is 'so obvious' that a failure to do so would properly be considered deliberate indifference to constitutional rights. *Tennessee v. Garner*, 471 U.S. 1 (1985).

Here plaintiff continues to repeat the events of the night of September 19, 2004, including the number of rounds fired. For example, he asserts that the police officers "[i]gnor[ed] the fact that Plaintiff had fallen and was clearly no longer a threat, ... [and] opened fire and discharged a total of seventy-three rounds of ammunition." (Pl.'s Reply [17] at 4.) The Court assumes that these statements are provided to show that a constitutional violation occurred through the Cobb County police officers' use of excessive force. Yet, as noted, the Court will assume, for argument's sake, that excessive force was used. To hold the municipality liable for this excessive force, plaintiff must make a showing under the appropriate standards, set out above. He has completely failed to do so.

Plaintiff has alleged that Cobb County had a custom or policy of failing to train its police officers. However, plaintiff has offered no specific allegations or evidence to support this

14

assertion. He asserts that "[d]efendant exhibited deliberate indifference by failing to adequately train its officers regarding the appropriate amount of force necessary to effectuate an arrest, despite Defendant's prior knowledge that better/different training was necessary." (Pl.'s Reply [17] at 15.) Yet, plaintiff points to no other prior, similar encounter involving Cobb County police officers that would have put the County on notice of the need for better training to address the situation at issue. Nor does he posit any other fact to support his allegation that the officers were either inadequately trained, or that it was Cobb County's policy or custom to 'allow such behavior.' (*See id.*) Moreover, he never explains why the conduct of the officers was deficient--other than, after the fact, it appeared to be so--nor what training the County should have employed to have averted the conduct of the officers.

In short, while plaintiff says the right words, in a very abbreviated, conclusory way, he never supports any of his characterizations with specific descriptions of the training that he contends should have been offered, nor does he explain why the County's training practices were deficient. In striking contrast, defendant has provided over 500 pages of evidence. (*See* Attachments to DBSM [15].) Included with its brief is a sworn statement by the Chief of Police of Cobb County attesting to the Cobb County Use of Force Policy; the investigations that ensued after the incident on

September 19, 2004; the training that each of the involved officers has undergone; and other relevant aspects of Cobb County's police work. (Attachment 1 to DBSM [15].) Defendant has also provided police reports from the arrest; Use of Force Statistical Reports created by the Weapons Training Unit; the actual Use of Force Policy and Code of Conduct that is currently in effect in Cobb County; and Officer Profile Reports, which list the training history for each officer involved.[3] *(Id.)*

In short, when looking to the record before the Court, that record may be broken down into (1) the voluminous evidence provided by Cobb County in support of its assertion that it has implemented thoughtful policies and that it takes its training and enforcement of those policies very seriously and (2) a short affidavit by plaintiff that does not even address Cobb County's policies or training, but instead focuses only on the events of the evening.

To succeed on its motion for summary judgment, defendant must "'show[]'--that is, point[] out to the district court--that there is an absence of evidence to support the non-moving party's case." *Celotex* at 325. This is exactly what defendant has done here. To avoid summary judgment, plaintiff is required to move beyond

---

[3] The fewest number of hours reported for any officer present at the arrest is 829 hours of training. This is the number of hours reported for an officer who started on the force in 2003.

assertions and present some competent evidence to prove that there is a genuine issue of fact for trial. *Id.* at 324. Plaintiff has not done so. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), plaintiff has presented no evidence or facts that would support a finding in his favor. Therefore, on the record before the Court, a jury would not be permitted to find for plaintiff. Accordingly, summary judgment for defendant is warranted.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Motion for Summary Judgment [15] and **DENIES as moot** defendant's Motion for Judgment on the Pleadings [15]. The Clerk is directed to close this action.

SO ORDERED, this 28 day of March, 2008.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

17

AO 72A
(Rev.8/82)